(No. 36081.—

The Department of Public Works and Buildings, Appellee, *vs.* Lindell Earl Maddox *et al.,* Appellants,

*Opinion filed March 29, 1961.*

C. E. Tate, and Summers & Watson, both of Champaign, for appellants.

William L. Guild, Attorney General, of Springfield, (William C. Wines, and Theodore G. Maheras, Assistant Attorneys General, and Richard J. Welsh, Special Assistant Attorney General, of counsel,) for appellee.

Mr. Justice Solfisburg delivered the opinion of the court:

This case comes before us on direct appeal under the provisions of the Eminent Domain Act, (Ill. Rev. Stat.

1959, chap. 47, par. 12). The petitioner, the Department of Public Works and Buildings, filed a petition to condemn certain lands of the defendants. The cause was tried before a jury which fixed the value of the land taken, as well as damages to the land not taken. Judgment was entered on the verdicts and the defendants appeal.

The defendants contend that the trial court erred in refusing to permit them to introduce evidence of business losses sustained during the period of construction; evidence of the cost of rehabilitation of the remaining premises after construction; evidence of the loss of access during construction and after construction; evidence of the depreciation in value occasioned by the construction of median strips; and in giving and refusing to give instructions relative to the previous points.

The petitioner suggests that all elements of damages proper to be considered by a jury were introduced, and that the defendants were awarded adequate damages both for the land taken and the resultant decline in fair cash market value of the land not taken.

Defendants owned 32.5 acres of land situated in the northeast corner of the "T" intersection of Villa Grove Road, which runs north and south, with U.S. Route 36, which runs east and west, about seven miles east of Tuscola, in Douglas County. Three acres in the corner were occupied by a combined gasoline filling station, restaurant, and residence. Five acres at the north end of the acreage were rented for grain storage bins. The remainder of the land was cultivated.

Prior to the taking, Route 36 was a two-lane concrete pavement 18 feet in width, with 11-foot shoulders. Villa Grove Road was a two-lane concrete pavement 18 feet in width, with shoulders of eight feet. The defendants' property extended east from Villa Grove Road a distance of 600 feet, and north from Route 36 a distance of 80 rods. The filling station was located 117 feet north of the center line

of Route 36, and 140 feet east of the center line of Villa Grove Road. The building was 30 feet by 60 feet in dimensions. Northwesterly of the building two gasoline storage tanks were located. A gasoline pump island was located 22 feet south of the building. There was virtually uninterrupted access to the highways on the southern and western boundaries of the property.

The Department of Public Works and Buildings took a triangular piece of land in the very corner, 60 feet on each side. The Department also took a piece of land along the south edge of the property (bordering Route 36) 30 feet in width for 185 feet, and 25 feet in width for an additional 362 feet, measured from the west boundary. Finally the Department took a piece of land along the west edge of the property (bordering Villa Grove Road) 20 feet in width for 375 feet and ten feet in width for an additional 300 feet, measured north from the south boundary.

Three witnesses testified for petitioner and five for defendants on the question of value. Their opinions varied from $1500 to $8000 for the value of the land taken and between $5,000 and $30,500 for depreciation in value of the remainder.

The total acreage taken was .63 of an acre. The compensation for this was fixed at $3,000, and inasmuch as no point is made concerning this amount either in the briefs or the argument, we assume that the award was satisfactory to the defendants.

The net result of the taking was to increase half the right of way on Route 36 from 40 feet to 65 feet, opposite the filling station, and on Villa Grove Road from 40 to 60 feet. Prior to the construction the defendants had two entrances to their property from Route 36 located 122 feet and 228 feet east of Villa Grove Road, and two entrances from Villa Grove Road, one located 129 feet and the

other located an unascertained number of feet north of Route 36. These were all closed, and three new entrances from Route 36 were constructed, located 160, 190 and 460 feet respectively from Villa Grove Road. Two new entrances from Villa Grove Road were constructed located 167 and 450 feet respectively north of the centerline of Route 36.

A median strip, six inches in height, was constructed on each highway, running east 310 feet from the intersection, and north 390 feet from the intersection. At the extremities of these strips a vibrator type corrugated median was constructed for an additional 60 feet on Route 36 and an additional 97 feet on the Villa Grove Road.

The gasoline storage tanks, after the taking, were only five feet from the new Villa Grove Road right-of-way line, contrary to regulations of the Department of Public Works and Buildings, and were moved by defendants.

The jury awarded the defendants $6,720.83 for the difference between the fair cash market value of the land not taken, before the taking, and its value after the taking. This award and the judgment thereon, is the subject of appeal.

We will consider the defendants' points in order. First, there is the contention that the defendants were entitled to have the jury consider the alleged loss of business during construction, in determining consequential damages. Defendants sought to prove that the machinery and dust occasioned by the construction forced them to close the restaurant and decreased the business of the filing station. The measure of damages is the difference between the fair cash market value of the premises immediately prior to the taking, and the fair cash market value of the premises immediately after the taking. (*City of Chicago* v. *Provus,* 415 Ill. 618; *Forest Preserve District* v. *Galt,* 412 Ill. 500.) Damages which may arise from a temporary loss of busi-

ness during construction are not compensable. (*Chicago Flour Co.* v. *City of Chicago,* 243 Ill. 268.) Under the well settled rules established in this State, the proffered evidence was properly refused.

Next we consider whether the trial court erred in refusing to permit the introduction of evidence of the cost of rehabilitation of the premises. The proffered evidence, defendants' exhibits 4 and 5, consisted of letters from contractors tantamount to estimates or bids for moving tanks and spreading crushed rock. The persons who signed the letters were not present in court, and were not subject to cross-examination. The trial court properly excluded the exhibits. Moreover, the defendants were not prejudiced by this refusal, because all witnesses on the subject of damages, both for petitioner and for defendants, testified that they took into consideration the items of rehabilitation, that is, moving the tanks, equipment, and spreading gravel, in reaching their opinions of the difference in value of the land before and after the taking.

The defendants complain that they were not permitted to introduce evidence of the loss of access during construction and after construction. The record shows that the defendant, Lindell Maddox, himself testified that he was not denied access during construction. The record also shows that witnesses duly considered limitation of access in arriving at their opinion of the difference in fair cash value.

A corollary of the claim for damages because of loss of access is the claim for damages because of the construction of median strips. There can be no question that the construction of such strips is a proper exercise of the police power. (*Ryan* v. *Rosenstone,* 20 Ill.2d 79.) As we have indicated, there was considerable testimony regarding the question of access. Examination of the record discloses that the trial court acted properly in refusing to permit unrelated testimony on the construction of median strips.

The final point raised by defendants is that the court

erred in refusing to give their tendered instructions No. 4 and No. 5, and in giving petitioner's instruction No. 10. Defendants' instruction No. 4 was abstract, and singled out and unduly emphasized the limitation of access as an element of damage. We think it was properly refused. *City of Chicago* v. *Provus,* 415 Ill. 618, 625.

Instruction No. 5 tendered by defendants was an abstract and unnecessary definition of the word "access." That word had been used repeatedly throughout the trial, and the instruction could not have aided the jury.

Petitioner's instruction No. 10 pertained to the construction of median strips, and correctly stated the law on this point. Considering the instructions as a whole, we think the jury was fairly informed of the law and the proper elements of damage to be taken into consideration.

There was a wide variance between the value ascribed to the property by witnesses for the petitioner and witnesses for the defendants. This is not unusual in condemnation cases. The award for compensation because of the difference in fair cash value before and after the taking was within the limits of the testimony. Damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, the jury has viewed the premises, and the amount of compensation fixed is within the range of evidence, unless there appears to have been a clear and palpable mistake or the verdict was the result of passion or prejudice. (*Forest Preserve District* v. *Galt,* 412 Ill. 500.) We do not find a clear and palpable mistake, or any evidence of passion or prejudice, and the judgment of the circuit court of Douglas County is therefore affirmed. affirmed.

*Judgment affirmed.*