Illinois Building Authority, a Body Corporate and Politic, Appellant, v. Stanley Dembinsky, Jr., et al., Appellees.

**Gen. No. 67–73.**

Second District.

December 28, 1967.

Rehearing denied February 1, 1968.

Morrison and Nemanich, of Waukegan, for appellant.

Frank M. Daly, of Waukegan, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

The Illinois Building Authority brings this appeal from a judgment entered by the Circuit Court of Lake County on December 12, 1966, based on a jury verdict, that found that the defendants were entitled to compensation in the amount of $43,400 for certain property owned by them

and taken by the appellant pursuant to the Eminent Domain Act.

On August 16, 1965, the appellant (hereinafter called petitioner) filed a petition to condemn certain property owned by the defendants (hereinafter called owners), for a public park and recreational use. The property is a vacant, rectangular tract of land of approximately 26 acres that had been acquired by the owners in 1953 and is located in an unincorporated section of Lake County between the municipalities of Waukegan and Zion. It is bounded on the west by a railroad right of way, a public utility power line and, approximately 350 feet further, by a mobile home park and on the north, east and south by the public owned Illinois Beach State Park to which it will be joined.

The tract lies within a flood plain area and contains six ponds, comprising approximately 10 acres, that were caused by sand mining operations conducted by the owners. Another 6 acres are low and swampy and the remaining 10 acres are roadways, corridors and corners between the ponds. Two dirt roads provide access to the property from the south.

The petitioner contends that the judgment order must be reversed and the cause remanded for a new trial because of various errors committed in the trial that prevented the fair and impartial proceeding to which it is entitled. The specific errors urged by the petitioner are the unreasonable restrictions imposed on its pretrial discovery; the prejudicial effect of a certain sign erected on the property and other activity observed by the jury during the course of their physical examination of the property; the admission and exclusion of evidence of sales of certain other property by the trial court; and, the prejudicial conduct of counsel for the owners.

Richard Drew, one of the owners, refused, on advice of counsel, to answer certain questions propounded to him in

the course of a discovery deposition. The objections to some of those questions were sustained by the court at a subsequent hearing and Drew was ordered to answer certain others. Drew was not required to answer questions relative to any application on his part for rezoning of the property under the ordinances of Lake County; the amount of sand removed from the property since he had acquired it and specifically those amounts removed during the years 1964 and 1965; the price obtained for the sand that was removed and sold and the names of the purchasers. The petitioner does not contend that the lack of any specific information thus sought adversely affected the presentation of its case but rather that the limitations imposed on its discovery prevented its foreknowledge of the owners' "theory" of the case, that is, their opinion of the highest and best use of the land.

■ It is argued that until the trial commenced, the petitioner had no idea what evidence would be presented by the owners as to the highest and best use and was thus unable to properly prepare to engage that crucial element in all comdemnation cases. The record contains little support for the idea that the petitioner was unapprised that the owners would offer evidence that the land was used as a sandpit and that, under the circumstances, that use was the "highest and best" for the property. Indeed, the disclosures that the land was used as a sandpit and estimates as to the amount of sand already removed and that amount still deposited on the property were made during the presentation of the petitioner's case in chief. In any event, there is no authority for the proposition that a condemning body is entitled to discover, before trial, the opinion testimony to be presented by the landowner as to the higest and best use of the property nor do we feel that there is a compelling reason for such a proposition.

A large sign was placed on the property shortly before the jury visited it. The sign declared, in bold letters,

"Clean Sand, 75¢ yd. Delivered $2.35 yd." The petitioner argues that the sign inevitably injected an improper element into the computation by the jury of the compensation to which the owners were entitled.

It is the rule in Illinois that minerals deposited on land to be condemned should not be considered separately in any determination of value. Department of Public Works and Buildings v. Hubbard, 363 Ill 99, 102, 1 NE2d 383; Forest Preserve Dist. of Cook County v. Caraher, 299 Ill 11, 17, 132 NE 211. It is felt that a separate valuation on the deposits must include the elements of prospective profits, market demands, costs and other factors of a speculative nature and therefore are too uncertain to be properly employed. City of Chicago v. Central Nat. Bank in Chicago, 5 Ill2d 164, 125 NE2d 94. It is proper, however, to consider the presence of the minerals as part of the overall value of the land.

There is no indication that the jury made a separate evaluation of the sand deposits on the land in its determination of the value as a whole. It was told to disregard the sign and the only evidence introduced as to the various prices charged for sand was presented by the petitioner. On the same point, it does not appear that the jury was affected by the presence of numerous dump trucks, bulldozers and draglines on the property during its visit although it is urged by petitioner that the scene was staged to create the impression of a virtual beehive of mining activity. It was abundantly established by other competent evidence and admitted by the petitioner in its closing argument, that the property was used, albeit sporadically, as a sandpit and that it could be so used in the future. The intensity of that use on any particular day was not properly a factor in any determination of value nor does it appear that it was so considered by the jury.

It is well recognized that the trial court will be given wide discretion in its admission or exclusion of

evidence of other sales in a determination of value. City of Chicago v. Vaccarro, 408 Ill 587, 600, 601, 97 NE2d 766. "If a reasonable basis exists for the purpose of comparing the land sold with property being condemned, such dissimilarities that might exist will affect the weight, not the competency, of the evidence and can be considered by the jury." Park Dist. of Highland Park v. Becker, 60 Ill App2d 463, 470, 208 NE2d 621. The trial court, in the case at bar, refused to admit into evidence a 1964 sale of a 42-acre parcel owned by Elmer Fuller approximately 7 miles from the subject property for a price of $750 per acre. The petitioner claims that the exclusion of this sale was improper inasmuch as the property contained sand and gravel, was subject to flooding, and was located directly across the road from a parcel the sale of which was admitted into evidence as comparable. The offer of proof indicated that Fuller would testify that he had used the property as a farm and did not know the use proposed by his purchaser. Prior to his sale, Commonwealth Edison had made borings on the property and Fuller observed sand and gravel in the borings.

The court did admit, over the objections of the petitioner, evidence of a 1955 sale of 93 acres 8 miles from the subject property; a 1957 sale of 60 acres 15–20 miles away; a 1964 sale of 56 acres that was 10 miles from the property; a 1965 sale of 95 acres 15 miles away; and the 1966 sale of 40 acres across the road from the Fuller farm. It is true, as contended by the petitioner, that some of these sales occurred years before the petition to condemn was filed and certainly the time of the sale is an important element in any determination of its comparability. Likewise, the amounts of sand and gravel deposited on the parcels differed widely. These dissimilarities were, however, lucidly disclosed to the jury and would not, in themselves, make the sales incompetent as evidence. It is significant that all of the sales admitted

456

involved purchasers interested primarily in the sand and gravel deposits. There was no evidence that the Fuller sale was at all predicated on the presence of any mineral deposits and the conclusion of the trial court that it was not comparable was certainly not an abuse of its discretion.

The counsel for the defense did permit himself an unwarranted moment of levity with a recitation of a short stanza from a nursery rhyme and we certainly would not encourage such conduct but neither can we agree that the jury was in any way affected by it. It was also improper for the defense counsel to remark that his opponent had coached a witness but an examination of the colloquy indicates that it referred only to a specific and leading question asked of the witness and could not be considered sufficiently harmful to merit reversal.

The witnesses for the owners testified that the highest and best use of the property was as a sandpit and, ultimately, for landfill and, as such, was worth between $2,000 and $2,600 an acre. The petitioners presented evidence that the property was worth no more than $500 an acre and that the highest and best use was as a private hunting or fishing club. The verdict returned by the jury was well within the range of the evidence adduced. Since we have also concluded that the trial proceeded in accordance with the interests of justice, the judgment order of the lower court will be affirmed.

Judgment affirmed.

DAVIS, P. J. and MORAN, J., concur.