TRI STATE PARK DISTRICT, Petitioner-Appellee, *v.* FIRST NATIONAL BANK OF CICERO, Trustee, *et al.*, Defendants-Appellants.

(No. 73-408;

Second District (1st Division)—November 6, 1975.

Burke, Gordon & Weber, of Chicago, for appellants.

Thomas R. Krone, of Downers Grove, for appellee.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The Park District filed a petition to condemn 11.7 acres (including a 5.5-acre man-made lake) out of a tract of 24.1 acres on the west side of Route 83 near 87th Street in Du Page County. The owners cross-petitioned for damages to the remainder. After a bench trial, the court fixed

the compensation for the property to be taken at $11,700 and found no damages to the remainder. Judgment was entered reflecting those findings.

On appeal, the landowners contend, in substance: (1) that, with respect to the 11.7 acres to be taken, its value must be determined as a part of the whole tract before the taking and not as a piece of property separate and disconnected from the rest; (2) that, insofar as the said 11.7 acres are concerned, the District's expert testimony and the court's determination as to compensation both clearly demonstrate that this principle has here been completely ignored; (3) that the court's determination that there was no damage to the remainder is contrary to the manifest weight of the evidence; and (4) that, as a result, the judgment must be reversed and a new trial had. We agree on all points and therefore reverse and remand.

On July 19, 1971, the Tri State Park District filed a petition with the circuit court to condemn an 11.7-acre parcel of realty, which was part of a 24.1-acre tract held in a land trust by the First National Bank of Cicero for the benefit of Mr. and Mrs. Edward Chlumsky. The property is located on the west side of Illinois Route 83 between 87th Street and Timberlake Drive in the Hinsdale Timberlake Estates Subdivision of Downers Grove Township, Du Page County. The property is zoned R-2, single family residential, under the Du Page County ordinance. After acquiring the property, the owner developed a man-made lake, consisting of approximately 5.5 acres, which is located within the 11.7-acre parcel subject to the condemnation proceeding. The property was sought by the Tri State Park District for use as a public park. Prior to hearing the testimony of the witnesses, the trial judge inspected the entire 24.1-acre tract in the presence of counsel for both parties.

The petitioner's first witness, Raymond J. Flood, a soil engineer, testified that his firm had made two soil borings on the land adjacent to the lake and that these borings indicated the soil contained peat. On cross-examination, he testified that certain methods are available to a builder to remedy poor soil conditions.

Mr. Louis Osadjen, the President of the Tri State Park District, testified that the petitioner intended to leave the 11.7-acre parcel in its present state and use it as a public park. Later, the owners called Mr. Osadjen as a witness under section 60 of the Civil Practice Act. He testified that the park district had not considered alternative sites for the proposed public park before commencing this condemnation proceeding; that he himself owned an 18-acre tract located only one block north of the park site; and that he recently had obtained a zoning variance for the property he owned.

Thomas M. Collins, an appraiser appearing on behalf of the petitioner, testified that the fair cash market value of the entire tract on July 19, 1971, (the date the petition was filed) was $141,700. He further testified that the fair cash market value of the 11.7-acre parcel was $11,700 and that the value of the 12.4 acres remaining was $130,000. In his opinion, the value of the 12.4-acre remainder was the same both before and after taking the 11.7-acre parcel with the lake. Consequently, he ascertained that there was no damage to the value of the remainder by virtue of taking the acreage with the lake on it. However, on cross-examination, Mr. Collins testified that the ability to plat lots with lake frontage would increase the value he had assigned to the property and that from a marketing standpoint, the ability to market private use of the lake would be an asset to the developer.

Mr. Benson, a second appraisal witness called by the petitioner, stated that the highest and best use of the land taken was as a retention basis for the surrounding area and as a recreational area. In his opinion, the value of the entire 24.1 acres was $127,500. He testified that he valued the 11.7 acres taken at $900 per acre "because of the restricted use," and the remaining 12.4 acres he valued at $9,000 per acre. In addition, he testified that in his opinion there was no damage to the remainder by virtue of the taking. On cross-examination, Mr. Benson agreed with Mr. Collins' statement that the existence of a private lake is a marketing asset to the developer of a tract of land, but he asserted that considering only the 11.7 acres taken, the marketability of that parcel "is so limited as to be almost non-existent."

The appraiser appearing on behalf of the owners, Don P. Neuses, testified that the value of the entire 24.1 acres at its highest and best use was $241,000. He further testified that in his opinion the value of the 11.7 acres was $117,000. He ascertained the value of the remaining 12.4 acres, before taking of the parcel with the lake, at $124,000. After taking the 11.7-acre parcel with the lake, the remainder decreased in value to $111,600, according to Mr. Neuses. Hence, he determined that the remainder was damaged by virtue of the taking in the amount of $12,400. In determining this damage to the remainder of the tract, Mr. Neuses testified that a primary consideration was the owners' loss of the ability to market private recreational use of the lake. In addition, he testified that his evaluation of the property and of the damage to the remainder was the same whether developed under the present single-family residential zoning or under a zoning allowing multiple-family units.

After hearing the testimony, the court requested written briefs from both parties and suggested that the parties explain the disparity in the appraisal testimony.

Subsequently, the court granted the parties the opportunity to orally argue their respective positions regarding the appraisal testimony. At that time, the position taken by the Tri State Park District was that the court could value the property taken either as a part of the whole *or* as a separate entity; and that in this case, the proper method was to evaluate the property taken as a separate and distinct entity, unrelated to the entire tract. Counsel for the petitioner stated that the petitioner's appraisal witnesses, Mr. Collins and Mr. Benson, did not value the property taken as a part of the entire tract. Rather, counsel for the petitioner asserted, "[T]hey considered it taken as a separate and distinct part, unrelated to the entire property."

On the other hand, counsel for the owners argued that the property taken must be valued as a part of the entire tract in order to arrive at just compensation based on the highest and best use of the land. It was asserted that the highest and best use of the part taken was its use in conjunction with the entire tract, and not as a separate and distinct parcel.

Thereafter, the court rendered its judgment finding no damage to the remainder of the tract and ascertaining just compensation for the 11.7-acre parcel at $11,700.

The owners' *first* contention, is, in substance, that, with respect to the 11.7 acres to be taken, its value must be determined as a part of the whole tract before the taking and not as a piece of property separate and disconnected from the rest. There is no doubt that this is and has been the law in Illinois.

■■ Perhaps the clearest statement of the law on this point is found in section 300.44 of the Illinois Pattern Jury Instructions, Civil (2d ed. 1971), where it is said:

"300.44 Measure of Damages—Property Taken to be Considered as Part of the Whole Tract.

In arriving at the fair cash market value of the property taken, you should determine its value considered as a part of the whole tract before the taking and not its value as a piece of property separate and disconnected from the rest of the tract."

Another good statement is found in 17 Ill. L. & Pr. Eminent Domain ch. 2, § 65, at 241 (1956), where it is said:

· "Where land sought to be taken for public use is of greater value considered as a part of the entire property than if considered as disconnected from the residue, the compensation to be paid for the part so taken is its fair cash or market value considered in its relation to, and as a part of, the entire property, and not its value as a separate piece."

The Illinois cases so hold. In an early (1886) case, *Chicago & Evanston R.R. Co. v. Blake,* 116 Ill. 163, 168, 4 N.E. 488, the circuit court was asked to give the following instruction:

"If the jury find, from the evidence, that the part of the lot proposed to be taken in this case is of greater value when considered as a part of the entire lot than it would be as a separate and distinct piece of property entirely disconnected from the residue of the lot, then the jury, in order to make the owner of the lot just compensation for the part of the lot taken, may allow to him the fair cash or market value of the part of the lot taken, when considered in its relations to and as a part of the entire lot, and not simply what may appear to be its value as a separate and distinct piece of property entirely disconnected from the residue of the lot."

At page 169, our Supreme Court said:

"The instruction, as originally drawn, contained a clear, accurate statement of the law, and should have been given as asked. It in effect told the jury that if there was a difference in the value of the land sought to be condemned when considered as a part of the lot from which it was taken, and when considered as a distinct and separate property, the higher or greater value should control or be allowed. So far, we think, there can be no question as to the correctness of the instruction."

And in *Chicago Burlington & Northern R.R. Co. v. Bowman* (1887), 122 Ill. 595, 13 N.E. 814, the court, at pages 600-601, said:

"And where but a part is taken, and the part taken is of greater value, in connection with the whole, than as a separate parcel, the measure of damages will be the fair cash value of the part taken, as a part of the whole. (*Chicago and Evanston Railroad Co. v. Blake,* 116 Ill. 163.)"

In *Illinois, Iowa & Minnesota Ry. Co. v. Humiston* (1904), 208 Ill. 100, 69 N.E. 880, the court, at page 106, said:

"It was the duty of the jury to award appellees compensation in dollars and cents for the fair market value of the land proposed to be taken, having regard to location and advantages as to situation, and the purposes for which it was designed and used; and we have held that, where but a part is taken, and the part taken is of greater value in connection with the whole than as a separate parcel, the measure of damages will be the fair cash value of the part taken as a part of the whole. (*Chicago and Evanston Railroad Co. v. Blake,* 116 Ill. 163; *Chicago, Burlington and Northern*

*Railroad Co. v. Bowman*, 122 id. 595; *Conness v. Indiana, Illinois and Iowa Railroad Co.* 193 id. 464)."

To the same effect, see *Southwest Chicago Drain Dist. v. McMahon* (1928), 329 Ill. 478, 480, 160 N.E. 750; *City of Chicago v. Cruse* (1929), 337 Ill. 537, 539, 169 N.E. 322; *Forest Preserve District v. Draper* (1944), 387 Ill. 149, 157-158, 56 N.E.2d 410; *Department of Public Works & Buildings v. Diel* (1967), 89 Ill.App.2d 130, 135, 232 N.E.2d 133; *County of Cook v. La Salle National Bank* (1971), 1 Ill.App.3d 579, 582, 274 N.E.2d 919; *Department of Public Works & Buildings v. Butler* (1972), 5 Ill.App.3d 134, 136, 283 N.E.2d 109.

We therefore agree with the landowners' first contention—that, with respect to the 11.7 acres to be taken, its value must be determined as a part of the whole tract before the taking and not as a piece of property separate and disconnected from the rest.

This brings us to the landowners' *second* contention—in substance, that, insofar as the said 11.7 acres are concerned, the District's expert testimony and the court's determination as to compensation both clearly demonstrate that the above legal principle has here been completely ignored.

■■ In the case at bar, counsel for the Park District stated to the court that its appraisal witnesses, Collins and Benson, did not value the premises to be taken as a part of the whole tract before the taking and that "they considered it as a separate and distinct part, unrelated to the entire property." As we have above demonstrated, this is exactly contrary to the law, and the court's determination that the 11.7 acres to be taken was worth only $1,000 per acre (although the rest was worth $9,000 per acre) reflects this same erroneous view.

We therefore agree with the landowners' second contention—that, insofar as the said 11.7 acres are concerned, the District's expert testimony and the court's determination as to compensation both clearly demonstrate that this legal principle has here been completely ignored.

This brings us to the landowners' *third* contention—that the court's determination that there was no damage to the remainder is contrary to the manifest weight of the evidence.

Not only was this determination an obvious result of the basically erroneous view as to the law (a part vs. a separate piece) but, although the Park District's expert witnesses at first testified that there was no damage to the remainder by virtue of the taking of the 11.7 acres with the lake on it, they both conceded, on cross-examination, that the developer's ability to plat lots with lake frontage would increase their value and that from a marketing standpoint, the ability to market the

private use of the lake would be an asset to the developer. Furthermore, the landowners' expert witness, Neuses, testified that the value of the 11.7 acres was ten times that given it by the court and that the damage to the remainder was $12,400.

● 3   It should be noted, in passing, that the net effect of the proposed condemnation by the Park District of this formerly private lake for a public park will be to allow purchasers of land in another subdivision only a block or so to the north (and owned by the president of the condemning Park District) to enjoy the use of the lake heretofore available only to purchasers in the condemnees' subdivision. This strikes us as outrageous and a conflict of interests on the part of the president of the Park District.

We therefore agree with the landowners' third contention—that the court's determination that there was no damage to the remainder is contrary to the manifest weight of the evidence.

As a result of the foregoing, we are compelled to and do agree with the landowners' fourth and last contention and reverse and remand for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and GUILD, J., concur.