(No. 50929.—

THE DEPARTMENT OF TRANSPORTATION, Appellee, v. TOLEDO, PEORIA & WESTERN RAILROAD COMPANY, Appellant.

*Opinion filed April 3, 1979.—Rehearing denied May 30, 1979.*

John E. Cassidy, Jr., of Cassidy, Cassidy, Mueller & Price, of Peoria, for appellant.

William J. Scott, Attorney General, of Springfield (Roy E. Frazier, Jr., Assistant Attorney General, and Tim Swain, Special Assistant Attorney General, of Peoria, of counsel), for appellee.

MR. CHIEF JUSTICE GOLDENHERSH delivered the opinion of the court:

Petitioner, the Illinois Department of Transportation, formerly the Department of Public Works and Buildings, filed an action in the circuit court of Peoria County to condemn 42.6 acres of land owned by respondent, Toledo, Peoria & Western Railroad Company. Petitioner moved that it be immediately vested with fee simple title (Ill. Rev. Stat. 1971, ch. 47, par. 2.1 *et seq.*), the court made a preliminary finding of just compensation, and funds in the required amount were deposited by petitioner and withdrawn by respondent. Subsequently, petitioner filed a motion *in limine* to exclude certain evidence at the trial to determine just compensation. The circuit court denied the motion and included in its order the findings requisite to an application for leave to appeal. (Supreme Court Rule 308 (58 Ill. 2d R. 308).) The appellate court allowed petitioner's application for leave to appeal and reversed the order of the circuit court (59 Ill. App. 3d 886). We allowed respondent's petition for leave to appeal.

In stating the issues presented, and announcing its rulings, the circuit court said:

"It is apparent from the pleadings and the evidence

taken at the 'quick take' hearing that the plans for Interstate By-Pass 474 called for a bridge across the Illinois River and across some lowlands near the property subject to this Petition for Condemnation. After the bridge was partially constructed, contracts were let to obtain fill material for a dike road inasmuch as a portion of the land is subject to flooding. In connection with these contracts, a subcontractor did purchase from the defendant, Toledo, Peoria & Western Railroad, certain quantities of fill material from the area presently subject to this condemnation suit at an arm's length contract on the open market for 12 cents per cubic yard. Thereafter the state sought to condemn the subject property and filed this Petition, the only use to be made of the property being the extraction of fill material for the nearby right-of-way roadbed.

It is the ruling of this Court that the proper measure of damages to be submitted to the jury is the value of the land including the mineral content thereof; that the jury is entitled to know that the sole purpose of acquiring the land was to obtain minerals; that there had previously been a contract arrived at at arm's length by subcontractor for these minerals for this purpose a short period prior to the filing of this Petition, because each of these facts would have been considered by a willing buyer and a willing seller in determining what market price might be established for this property at the time of the filing of the Petition for Condemnation."

The circuit court certified the following questions for interlocutory appeal:

"In determining the amount of damages for land taken, where the purpose of the taking is not for right of way but solely to acquire fill from nearby land:

(a) Is the proper measure of damages the value of the land, considering but not limited to the value of the fill material to be extracted?

(b) May evidence be introduced that the improvement is creating a 'one time' market for the fill material which a willing buyer and seller would consider in arriving at a fair cash market value at the time of the filing of the petition?

(c) May the fact be shown that in the earlier stages of the improvement a contractor in an arm's length purchase paid to owner $.12 per cubic yard for fill material for the improvement?

(d) May the actual amount of fill material taken after a 'quick take' and before trial be admitted into evidence?"

The appellate court held that the land taken was to be valued at its fair cash market value, as a whole, for its highest and best use; that the land included all the minerals, improvements and appurtenances connected therewith, all of which may be considered as factors in the determination of the fair cash market value "but under no circumstances is the fair cash market value to be the sum of such factors." (59 Ill. App. 3d 886, 890.) It held the evidence to which questions (b), (c) and (d) refer to be inadmissible.

Respondent contends that to be justly compensated for the taking it must be paid a sum computed by multiplying the number of cubic yards of fill material removed by 12 cents per yard, and that anything less would violate the provisions of the fifth amendment to the Constitution of the United States. The People contend that just compensation for the taking must be determined on the basis of the land as land, and not on the basis of determining the cubic yards of fill material removed.

In *Department of Public Works & Buildings v. Oberlaender* (1969), 42 Ill. 2d 410, petitioner sought to condemn approximately 44 acres of a tract of land which for many years had been used as a sand quarry. Witnesses for the landowner had considered the worth of the sand deposits separately in determining their opinions as to the value of the land.

The court said:

"It is not questioned here that the measure of compensation for land taken in a condemnation proceeding is the fair cash market value of

the property for its highest and best use. Fair market value can be defined as the price for which the property would sell under ordinary circumstances surrounding the sales of property, assuming both an owner willing to sell and a purchaser willing, but under no compulsion, to buy. (*Forest Preserve Dist. v. Hahn,* 341 Ill. 599, 602; see, *Department of Public Works and Buildings v. Filkins,* 411 Ill. 304, 307.) Concerning the fair market value of land containing mineral deposits this court has stated that: 'The rule is that compensation must be estimated for the land as land, with all its capabilities, and if there is timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land but they cannot be valued separately.' (*Forest Preserve Dist. v. Caraher,* 299 Ill. 11, 17; accord, *Department of Public Works and Buildings v. Hubbard,* 363 Ill. 99, 102; see also *City of Chicago v. Central National Bank,* 5 Ill. 2d 164, 175; *Chicago Land Clearance Com. v. Darrow,* 12 Ill. 2d 365, 372.) Putting it somewhat differently, where, as here, the property is not taken for the purpose of obtaining the minerals or a going business (see *City of Chicago v. Farwell,* 286 Ill. 415, 423; 29A C.J.S. Eminent Domain, sec. 174, p. 737, note 87), it is improper to appraise separately the mineral deposit and add its value to the value of the land without the deposits (4 Nichols on Eminent Domain 13.22; 1 Orgel, Valuation under the Law of Eminent Domain, 2d ed. sec. 165, p. 672; Jahr, Law of Eminent Domain—Valuation and Procedure, sec. 151; see *Department of Public Works and Buildings v. Lotta,* 27 Ill. 2d 455, 456.) It is proper, however, for the owner to

establish the existence of valuable mineral deposits on the real estate being valued and in doing this to show the character of the deposit(s) and to what extent it enhances the land's market value. *Forest Preserve Dist. v. Caraher,* 299 Ill. 11, 17-18; *Forest Preserve Dist. v. Kercher,* 394 Ill. 11, 23." (42 Ill. 2d 410, 415-16.)

Citing *Oberlaender,* respondent argues "that where, as in this case, the property is taken solely for the purpose of obtaining the minerals, it is not only proper, but constitutionally required, that the mineral deposit be valued separately at its per unit market value and the trial court has twice found that the fill material 'has a known market value of recent origin and date which was formed between parties dealing at arm's length' at 12 cents a cubic yard." It argues too that the value of the property taken was 12 cents per cubic yard even though it was the proximity of the original public improvement which created the market and the enhanced value. In support of this position it contends that the original petition sought to condemn only the fill material and the taking of the 42.6-acre tract was not within the scope of the original project, and that when the petitioner decided to take the land the per cubic yard market value had already been established. It argues that it follows from this that the value can be determined by multiplying the number of cubic yards taken by the unit price of 12 cents per cubic yard.

We agree with the circuit and appellate courts that the proper measure of damages is the value of the land taken, considering all the factors enumated in *Oberlaender.* To permit proof of the market for the fill material created by petitioner's construction project would result in the land being valued not as land, but as a source of fill material. This is contrary to the rule enunciated in *Department of Public Works & Buildings v. Oberlaender.*

The same objection would arise to proof of a prior

agreement to purchase the fill material at a price of 12 cents per cubic yard. That transaction resulted not from the value of the land as land, but from the fortuitous circumstance that, by reason of its proximity to the bridge project, fill material had that value at that particular time and place. Such proof would clearly be violative of the long-established requirement that in fixing the value of land all the factors be considered, and that it not result from a totaling of the various factors.

The evidence concerning the amount of fill material actually taken from the land would be inadmissible. It is well established that the valuation must be fixed as of the date of the taking, and as of the date of taking there was no way to determine the amount of fill material which would be excavated from the land condemned. Evidence of what occurred subsequent to the valuation date may not be considered.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*