THE DEPARTMENT OF TRANSPORTATION, Petitioner-Appellant, *v.* LEE S. HSUEH *et al.*, Defendants-Appellees (Citizens Savings and Loan Association, Defendant).

Fourth District   No. 4—82—0785

Opinion filed September 13, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Alfred B. LaBarre, Special Assistant Attorney General, and Roy Frazier, Assistant Attorney General, of counsel), for appellant.

Roscoe Bonjean, of Springfield, for appellees.

JUSTICE MILLS delivered the opinion of the court:

Condemnation case.

Is evidence of "cost to cure" admissible?

Yes—but only if the cure is correlated to fair market value.

We affirm.

The Department of Transportation of the State of Illinois brought suit to condemn land owned by Lee and Elaine Hsueh, seeking a fee interest in 0.43 acres of defendants' 7.03-acre tract for purposes of highway construction. The Hsuehs cross-petitioned, alleging damages to their remaining property resulting from the taking. After a jury trial, a verdict awarded the Hsuehs $15,000 as damages for the property taken and $52,000 as damages to the remainder.

The Department's sole contention on appeal is that the trial court erred in allowing defendants to introduce evidence of the costs of rehabilitating the remainder.

The property is located off Route 125 west of Springfield, Illinois. Improvements on the property consist chiefly of a one-story brick house which is divided into four separate family units, two single dwellings, an asphalt parking area and an asphalt roadway which provided access to the buildings. A substantial section of the roadway lay on the property taking by the Department.

Lee Hsueh testified that, as a result of the loss of the roadway, he needed to construct a new roadway. He testified he had employed Calhoun County Construction Corporation for construction work on the parking area and roadway and had paid the corporation $14,087.48 for work performed up to the filing of the law suit. He had also paid another contractor $2,295 for the construction of a temporary roadway.

Harry Rimbey, president of Calhoun County Construction Corporation, identified exhibits of defendants which included a bill from the corporation to Hsueh in the amount of $14,087.48, and an estimate

prepared by Rimbey for the construction of an alternate roadway for defendants. The total of the estimate was $46,767. Rimbey testified that remaining work included laying an asphalt surface at an estimated cost of $22,000.

James Call, defendant's appraisal witness, testified that the market value of defendant's property before the taking was $235,000 and the market value of the remainder after the taking was $170,200. He found the value of the property taken to be $12,040 and damages to the remainder to be $52,694. In evaluating the damages to the remainder, Call considered, among other things, the cost of tearing up the asphalt parking area and road, the cost of relocating water, sewer and gas lines, and the cost of installing steps and walkways among the buildings.

Charles Johnson, another appraisal witness for defendants, testified that the market value of the property before the taking was $275,000. He found the value of the property taken to be $14,000 and the damages to the remainder to be $50,000. Johnson testified that the remainder was significantly damaged by the need to restructure the traffic pattern on the property. He said there was "absolutely no question" that an alternate roadway was necessary.

The Department's first appraisal witness, Fred Tedrowski, testified that the fair market value of the property before the taking was $145,000, the value of the property taken was $6,300 and the fair market value of the remainder after the taking was $127,100. Consequently, he found the damages to the remainder to be $11,600. Tedrowski testified that in determining the damage to the remainder he considered the poor access available to and from the highway after the taking.

The Department's other appraisal witness, Wayne Briggs, testified that the fair market value of the property prior to the taking was $155,000, the value of the property taken was $12,350, and the value of the remainder after the taking was $138,150. Briggs then determined the damages to the remainder to be $4,500. Briggs testified that in evaluating the damages to the remainder he considered the necessity of a roadway from the existing parking area to two smaller dwellings.

■ The measure of recovery for damages to the remainder in a condemnation action is the depreciation in market value of the remainder resulting from the taking. (*Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 191 N.E.2d 245; *Department of Public Works & Buildings v. Maddox* (1961), 21 Ill. 2d 489, 173 N.E.2d 448.) Costs incurred in adapting land to use after the tak-

ing are not recoverable items of damages in themselves; however, evidence of such costs may be admissible as factors in considering market value depreciation. (*Bloomer; Department of Transportation v. Galley* (1973), 12 Ill. App. 3d 1072, 299 N.E.2d 810; *Department of Public Works & Buildings v. Seeber* (1968), 93 Ill. App. 2d 271, 235 N.E.2d 269.) To be admissible, evidence of rehabilitation costs must have some bearing on the market value. While certain improvements may be desirable, it is improper to show the cost of an improvement when there is no evidence that the need of the improvement decreases the market value of the remainder. See *Galley*.

■■■ In the present case, there was insufficient evidence relating the cost of building a new roadway system to the market value of the remainder. Although all four appraisal witnesses testified that they considered the need to construct certain roadways in determining damages to the remainder, none testified as to the extent that Rimbey's proposed construction would enhance the market value of the remainder. Without such testimony, Rimbey's estimate lacked a proper foundation. Consequently, the testimony of Rimbey and Hsueh regarding the costs of rehabilitation should have been stricken. Nevertheless, the error in failing to strike this testimony was harmless. The jury had viewed the premises and its verdict was within the range of the testimony. Under these circumstances, the verdict will not be disturbed absent a clear showing that it was the product of passion or prejudice or was affected by palpable error. (*Department of Public Works & Buildings v. Bloomer* (1963), 28 Ill. 2d 267, 191 N.E.2d 245.) There was no showing that the jury's verdict in this case was the product of passion or prejudice or was affected by palpable error.

The judgment of the trial court is affirmed.

Affirmed.

WEBBER, P.J., and TRAPP, J., concur.