MATTHEW KASSNEL *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF ROSEMONT *et al.*, Defendant-Appellees (The Village of Rosemont, Petitioner-Appellee, v. Exchange National Bank, Trustee, *et al.*, Defendants-Appellants).

First District (4th Division)   No. 83—2089

Opinion filed July 11, 1985.—Rehearing denied August 28, 1985.

Donald P. Smith, of Chicago, for appellants Matthew Kassnel, Elizabeth M. Kassnel, Red Devil Manufacturing Company and Exchange National Bank of Chicago.

Burke & Ryan, of Chicago (Thomas T. Burke, William E. Ryan, and Barry A. Springer, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

In this appeal appellants Matthew Kassnel, Elizabeth Kassnel, Red Devil Manufacturing Company, and trust No. 3672 of the Exchange National Bank of Chicago (hereinafter collectively referred to as Kassnel) seek review of two orders of the circuit court of Cook County finding that the village of Rosemont's condemnation of Kassnel's property was a lawful taking under the Real Property Tax Increment Allocation Redevelopment Act (Ill. Rev. Stat. 1979, ch. 24, par. 11—74.4—1 et seq.) and that the fair market value of the property at issue was $495,000. These orders arose from two distinct actions, for condemnation and for declaratory judgment, that were consolidated for hearing below.

On appeal Kassnel contends: (1) the proposed condemnation of the subject property constituted an unconstitutional taking of private property for a private use; (2) Rosemont failed to establish a *prima facie* case for the validity of its condemnation because it did not comply with the statutory requirement of approval of the redevelopment plan and project prior to designating the project area; (3) the trial court's determination of just compensation was against the manifest weight of the evidence.

We affirm the judgment of the trial court in the condemnation action and dismiss Kassnel's appeal from the judgment in the declaratory judgment action.

BACKGROUND

The Real Property Tax Increment Allocation Redevelopment Act provides a mechanism for municipalities to finance redevelopment

projects designed to eliminate or prevent urban blight. The Act specifically authorizes the acquisition of property by eminent domain. Ill. Rev. Stat. 1979, ch. 24, par. 11—74.4—4(c); *People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 403 N.E.2d 242.

Pursuant to this act, the board of trustees of the village of Rosemont in the summer of 1979 adopted a series of ordinances establishing a Tax Increment Redevelopment Plan and Project, designating the project area, and establishing financing procedures. After subsequently passing an ordinance authorizing the acquisition of the real property necessary to implement the plan, the village sent to Kassnel on September 11, 1979, a letter offering to purchase the subject property which was included in the plan.

On October 16, 1979, Kassnel filed a declaratory judgment action seeking a determination that the taking of their property proposed by Rosemont was unconstitutional (under article I, section 15, of the 1970 Illinois Constitution) in that the Kassnel property was not blighted and therefore the taking was only for the private purpose of enhancing the larger redevelopment area as a commercial venture for private investors. Kassnel also sought a declaration that if the Act permitted this taking then the Act itself was unconstitutional.

On October 22, 1979, Rosemont filed its petition to condemn the Kassnel property, the parties having failed to reach agreement on a purchase price. Kassnel filed a motion to dismiss and traverse, asserting the same grounds contained in its declaratory judgment action.

By agreement of the parties the declaratory judgment action and Kassnel's motion to dismiss and traverse the condemnation action were consolidated for hearing. Following an evidentiary hearing on those matters the trial court held that Rosemont's proposed taking was constitutional. Accordingly, on March 31, 1983, the court entered an order denying Kassnel's traverse and motion to dismiss in the condemnation action and also entered judgment on behalf of Rosemont in the declaratory judgment action.

Kassnel did not then appeal from the judgment in the declaratory judgment action. Instead the condemnation case proceeded to trial on the issue of just compensation. After all the evidence (summarized later in this opinion) was heard, the court found that just compensation would be $495,000. A judgment order to that effect was entered on July 25, 1983. Within 30 days of that order Kassnel filed its notice of appeal in the condemnation action. Kassnel also purported to appeal from the March 31, 1983, judgment order in the declaratory judgment action.

364

I

It is Rosemont's contention that Kassnel is precluded from challenging the constitutionality of the taking of their property because that issue was finally determined in the declaratory judgment action, from which Kassnel failed to take a timely appeal. Kassnel urges that by virtue of the consolidation of the two suits for hearing no appeal was required until after all the issues in both suits had been resolved, at least in the absence of any Supreme Court Rule 304(a) finding supporting an interlocutory appeal. (87 Ill. 2d R. 304(a).) Accordingly, we must determine the effect of the consolidation on the two suits.

Section 2—1006 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1006) permits a court to consolidate actions for its convenience when this can be done without prejudice to the parties. There are three types of consolidations: (1) if different actions are pending which involve substantially the same subject matter, the court may attempt to avoid multiple trials on the same issue by staying all proceedings but one to see if disposition of the one settles the other; (2) consolidation may be limited to a joint trial, with separate docket entries, verdicts and judgments, where several actions involve an inquiry into the same event in its general aspects; (3) where several actions might have been brought as a single action, the cases may actually be merged into one action, thereby losing their individual identity, and they are then disposed of as one suit. *Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, 375 N.E.2d 881; *Vitale v. Dorgan* (1975), 25 Ill. App. 3d 941, 323 N.E.2d 616.

In this cause the two suits were consolidated for hearing on certain common issues, but separate case numbers were retained and separate judgments were entered in each case. The judgment order of March 31, 1983, specified that judgment was being entered in the declaratory judgment action for Rosemont. The judgment order of July 25, 1983, pertained only to the condemnation action. Clearly then, in this cause, the consolidation of the actions was only to permit a single hearing of evidence relating to common issues and did not result in the merging of the two matters into a single suit. *Shannon v. Stookey* (1978), 59 Ill. App. 3d 573, 375 N.E.2d 881.

Because the declaratory judgment action remained a separate suit, when Kassnel was faced with a final order in that action, its failure to timely file a notice of appeal deprived this court of jurisdiction, requiring dismissal of Kassnel's subsequent untimely attempted ap-

peal from that judgment order. (*In re Estate of Schwarz* (1965), 63 Ill. App. 2d 456, 212 N.E.2d 329.) Furthermore, under principles of *res judicata* Kassnel is precluded from relitigating those issues that were the subject of the final order in that prior case. (*General Parking Corp. v. Kimmel* (1979), 79 Ill. App. 3d 883, 398 N.E.2d 1104.) Therefore, because Kassnel's attack on the propriety of Rosemont's condemnation involves precisely the same issues raised and finally determined in the declaratory judgment action, we will not consider those contentions here.

## II

■ Kassnel also contends that Rosemont failed to prove a *prima facie* case in its condemnation suit. The Real Property Tax Increment Allocation Redevelopment Act requires that prior to the designation of a redevelopment area a municipality must first approve a plan and project. (Ill. Rev. Stat. 1979, ch. 24, par. 11—74.4—4.) In the record on appeal Kassnel has included a copy of the ordinance designating the redevelopment area in this cause. That copy of the ordinance bears the date of June 5, 1979, one month prior to the enactment of the ordinance approving the plan and project. It is solely on this basis that Kassnel asserts the failure of proof. We find no merit to this contention.

Kassnel concedes that it never raised this issue in the trial court. On that ground alone the issue is deemed to have been waived. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.) Furthermore, it is apparent that Kassnel is relying on a clerical error. On February 9, 1982, pursuant to Supreme Court Rule 329 (87 Ill. 2d R. 329), the trial court held that the ordinance actually submitted by Rosemont at trial indicated that it was enacted July 5, 1979. The court specifically found that the copy of the ordinance originally included in the record on appeal was not the exhibit admitted in the trial court.

## III

■ Consideration of Kassnel's contentions of error concerning the finding of fair market value for its property requires a summary of the evidence adduced on that issue of value.

At the valuation hearing Rosemont first presented the testimony of Neil King, a real estate broker, mortgage banker, and appraiser who testified that he had been appraising property for 25 years. In the five or six years prior to the hearing he had appraised numerous properties in Rosemont, including most of the properties in the rede-

velopment area.

King was hired by Rosemont in 1977 to appraise the Kassnel property and his valuation testimony related to that property as of October 22, 1979. The subject property consisted of two 30,000-square-foot parcels. One parcel, located at the northeast corner of River Road and Evenhouse Avenue in Rosemont, was improved with a 9,450-square-foot one-story industrial building containing some offices. It was being used as a machine shop and according to King, who had inspected it, was in generally good condition. The second unimproved parcel was directly east and adjacent to the improved property, 300 feet east of River Road, and was bordered on the south by Evenhouse Avenue. At the time of the valuation it was being used for the storage of trailers.

In establishing a value on the property King considered the nature of the immediate surrounding area. To the north was an area including a garbage dump, with accompanying odors and smoke affecting property in all directions. Also in the area were an abandoned cemetery, an automobile salvage yard, a gas station, a never-completed building, and a greenhouse. Directly to the south was a 420,000-square-foot industrial building experiencing sinking caused by poor subsurface soil conditions. Also in the vicinity was a refuse disposal company with its garbage trucks parked on an unpaved parking lot creating much dust.

According to King, the subject property was in a strategically good location in Rosemont, close to the tollway, but the area was not likely to develop because of the nature of the surrounding uses.

King testified that the highest and best use for a property was that use providing the greatest money value without any deleterious effect on surrounding properties. In evaluating this factor he took into consideration the fact that the subject property was zoned for service and light industrial use, the surrounding industrial use, and the nearby heavy truck traffic. He concluded that the highest and best use for both parcels would be industrial, with it being anticipated that an industrial building would be constructed on the unimproved parcel.

In determining the value of the subject property King also considered what he deemed to be the most comparable recent sales of real estate in the industrial area in Rosemont. He testified that he was familiar with most of the sales in Rosemont occurring between 1977 and 1980. He acknowledged that none of the sales were directly similar to the subject property, and he took this into account in establishing his valuation.

King considered six comparable sales of improved property sold or placed under contract between November of 1977 and November of 1979. Their sale prices per square foot of building space, including vacant land (only the building space would be multiplied times the per-foot price, with the additional vacant land being included in that price), ranged from $16.03 to $29.06.

On cross-examination King testified that a number of these buildings shared common walls with buildings on other property and had lower building-to-land ratios than the subject improved property, factors which he conceded would generally result in lower valuations. But he also testified that in Rosemont the demand and use was such that lower building-to-land ratios did not generally affect value. Similarly, he testified that the use of common walls was such an accepted method of construction in Rosemont that any diminution in value was minimal.

King also testified that he took into account the fact that the subject improved property, unlike all the properties in the comparable sales, had direct access to River Road. However, he discounted this factor because of the problems with the property surrounding the subject property.

Based on all these factors King placed a value of $25 per square foot of building, including land, on the improved parcel, resulting in a total value of $236,250 for that parcel.

King also considered two comparable sales of unimproved property in industrial areas of Rosemont. One parcel, the Wagner property, was directly north and adjacent to the subject property, with 157 feet of River Road frontage. It was offered for sale on the open market for $575,000. Rosemont bought it in June 1979 for $540,000, or $3.30 per square foot. The contract specifically stated that the sale was made without consideration of any condemnation. King could not recall whether at the time of that sale the impending condemnation of the area had yet been made public.

The second comparable sale of unimproved land used by King was that of 69,696 square feet of vacant property in an area of office buildings, with 228 feet of River Road frontage. That property was sold in March 1977 for a price of $3.59 per square foot. Based on all these factors, King valued the unimproved parcel at $3.83 per square foot, or a total of $115,000. He testified that the valuation was higher than that of the two comparable sales because of the scarcity of industrial sites in Rosemont at the time.

The next witness for Rosemont was William A. McCann, a real estate appraiser and consultant who had been in the real estate busi-

ness for 24 years. He had previously appraised property in Rosemont for the village and for private clients. He had also testified as an expert witness in numerous condemnation and zoning cases.

McCann was hired in November 1982 to appraise the subject property as of October 22, 1979. He was familiar with the property and had inspected it. He shared King's opinion that the highest and best use of the property and the surrounding property was industrial, specifying that the improved property should be used for light manufacturing and the unimproved parcel developed for light industrial use.

McCann had considered the same comparable sales utilized by King. Taking these into account along with his knowledge of the subject property and the surrounding property, he established a fair market price of $25 per square foot of building, including land, on the improved property and $3 per square foot for the unimproved parcel, resulting in respective totals of $236,000 and $90,000.

McCann testified that he did not believe that individual factors such as shared building walls and lower building-to-land ratios would in themselves lower property values. He also testified that he did not believe the Wagner sale (the unimproved property directly north and adjacent to the subject property) was affected by any contemplated condemnation, as its sale price was comparable to surrounding sale prices.

The first witness for Kassnel was Matthew Kassnel, president and founder of the Red Devil Manufacturing Company, the business conducted on the subject property. He testified that the property was purchased in 1971 for $256,000 and had been kept in very good condition since then. He also stated that the property's location on River Road had resulted in increased business for the company. Kassnel identified newspaper articles establishing that in November of 1978, prior to the date of the Wagner sale, there had been published reports indicating that the Wagner property was to be part of the redevelopment project.

Kassnel's sole valuation witness was William J. Townsley, an appraiser holding certifications from a number of appraisers' associations. He was also the president of his own real estate appraisal firm. Townsley had previously appraised numerous properties in the northwest suburbs, but not in Rosemont itself. He was hired by Kassnel to value the subject property. Townsley's opinion of the fair market value of that property was substantially based on his analysis of what he believed to be comparable sales of improved and unimproved real estate in the general area.

In studying comparable sales of improved property, it was Townsley's opinion that most of the sales utilized by Rosemont's experts were not useful because they concerned attached buildings, a factor which he believed substantially reduced property value. Thus, he considered only one of those comparable sales, that of an unattached building, along with the sales of three other freestanding buildings. The prices per square foot for these buildings, including vacant land, ranged from $29.37 to $42.20.

Based on these sales, as well as his evaluation of the good condition of the subject building and its proximity to River Road, Townsley concluded that the building should be valued at $35 per square foot. As with the $25-per-square-foot price utilized by Rosemont's experts, this was to be multiplied only times the 9,450 square feet of the building.

But whereas Rosemont's experts then extended the resulting price to include the remaining vacant land on the entire parcel, Townsley only included roughly 15,800 feet of the improved parcel. This was apparently because he had determined that the optimal building-to-land ratio for that area was 1.67. Thus, he multiplied that ratio times 9,450 to arrive at 15,800. The remaining 14,200 square feet were then to be valued along with the 30,000 square feet of the unimproved parcel.

In valuing the unimproved land Townsley utilized the sale of eight vacant parcels in the area, with those prices ranging from $2.71 per square foot to $12 per square foot. However, he admitted on cross-examination that of these eight properties seven were purchased for commercial use, and only one was for industrial use. The price of the industrial property was $3.58 per square foot. Townsley conceded that the highest and best use for the subject improved property was "as improved," which was for light industrial use. Based on these sales he determined that the value of the unimproved land was $7 per square foot, or $308,000 (for the 44,000 square feet to which he applied this figure). When added to the value of the building, which he had placed at approximately $332,000, this resulted in a total valuation of the subject property of $640,000.

In summary, Neil King valued the improved property at $25 per square foot of the building, including all the vacant land in the improved parcel, for a value of $236,250. He valued the unimproved parcel at $3.83 per square foot, or $115,000, for a total valuation of $351,250 on the subject property as a whole.

McCann also valued the improved parcel at $25 per square foot of building, including all the vacant land in that parcel, rounding off the

result to $236,000. He valued the unimproved parcel at $3 per square foot, or $90,000, for a total value of $326,000.

Townsley valued the building at $35 per square foot but included only approximately 16,000 square feet of that parcel in this valuation. This valuation for a diminished portion of the improved property was approximately $331,000. He valued the remaining 44,000 square feet of unimproved land at $7 per square foot, or $308,000, for a total value of approximately $640,000.

The trial court valued the improved parcel at $37.15 per square foot of building, including all the vacant land in that parcel, for a valuation of $351,000. He valued the unimproved property at $4.82 per square foot, yielding $144,500 for a total valuation of $495,500.

Kassnel contends that this cause must be reversed and remanded because the trial court permitted Rosemont, over Kassnel's objections, to introduce certain comparable sales that Kassnel contended were not in fact comparable. But although at trial Kassnel did object to the introduction of some of these comparable sales (as Rosemont also objected to some of those used by Kassnel) in final argument to the court counsel for Kassnel stated (in response to Rosemont's objections):

"*** but the authority cited in opposition to these various sales *** speak generally to jury trials where, Your Honor, a jury could very well be confused by certain differences that either are real or imagined as brought out by competent counsel and might confuse a jury from coming to a decision. That problem does not reside within this case because this case is a bench trial being heard by you who, I believe, has heard as many condemnation cases as any judge who has ever sat in this Circuit Court. So, you can consider these sales and you can to the extent necessary to figure out what you believe are the similar factors or screen out the others and come to a decision as to what is fair and just for this land owner."

It is clear from this statement that Kassnel waived any objection to the admission of this evidence. It would appear that Kassnel had concluded that any dissimilarities it had brought out were properly matters going to the weight and value to be given to this testimony by the trial court. (*City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 170 N.E.2d 569.) Finally, we would note that the trial court indicated, just prior to making its valuation ruling, that it placed little weight on the evidence of comparable sales:

"*** I appreciate the fact that [comparable] sales in the normal land acquisition cases are very, very important elements in de-

termining value, but I don't know how that is important in a community that has as much condemnation going on as Rosemont does and I'm not too sure that the entire concept of condemnation out there hasn't affected the value of all the properties *** So, really I rely in making my determination more on the opinion of the experts."

Thus, we find no basis for finding that Kassnel was prejudiced by the introduction of this evidence of comparable sales.

## IV

■ Kassnel also contends that the fair market value found by the trial court was contrary to the manifest weight of the evidence. A reviewing court will not disturb an award of just compensation which is within the range of evidence unless that award can be attributed to passion, prejudice or clear mistake. *Department of Public Works & Buildings v. Klehm* (1973), 56 Ill. 2d 121, 306 N.E.2d 1, *cert. denied sub nom. Romano v. Department of Public Works & Buildings* (1974), 417 U.S. 947, 41 L. Ed. 2d 667, 94 S. Ct. 3072; *City of Chicago v. Bank of Ravenswood* (1981), 93 Ill. App. 3d 52, 416 N.E.2d 1115.

In this cause the trial court's award was well within the range of valuations testified to by the experts. Indeed the price per square foot of building utilized by the court was higher than that suggested by Kassnel's own expert.

Also, if Kassnel's suggested per-square-foot valuation for the building were applied to the entire improved property in the same manner as the valuations of the two other experts, then Kassnel's total suggested valuation for the two parcels would have been $540,750, only $45,250 more than the amount awarded by the court. We thus find no basis for disturbing the trial court's determination of fair market value.

The judgment of the trial court as to the condemnation suit is affirmed; Kassnel's appeal from the judgment in the declaratory judgment action is dismissed for lack of jurisdiction.

Affirmed in part; dismissed in part.

JIGANTI, P.J., and JOHNSON, J., concur.