THE VILLAGE OF ROUND LAKE, Plaintiff-Appellee, v. MARIANNE AMANN *et al.*, Defendants-Appellants.

Second District   No. 2—99—0372

Opinion filed February 15, 2000.

Joseph T. Morrison, of Morrison & Morrison, P.C., of Waukegan, for appellants.

James T. Magee, of Magee, Negele & Associates, of Round Lake, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiff, the Village of Round Lake, filed a condemnation proceeding to establish a public right-of-way. A trust, the Prtizker Family Trust, held the fee interest in the land under the proposed right-of-way and was developing the land in conjunction with a real estate developer, the Penguin Group (collectively, Penguin). Neither entity is a party to this appeal. Penguin had agreed to construct a roadway and dedicate the property to plaintiff. Defendants, Marianne Amann, Jack Pittelkow, and Janice Pittelkow, claimed an easement by prescription over the land proposed for the right-of-way. The trial court denied defendants' traverse and motion to dismiss and subsequently entered a judgment for condemnation that awarded nominal damages to each defendant as just compensation for the taking. Defendants appeal, contending that (1) the trial court erred when it denied their traverse and motion to dismiss; (2) the trial court used an improper method of valuation to establish the amount of compensation; and (3) the trial court improperly considered the testimony of plaintiff's appraiser (defendants' third contention is addressed in a nonpublished portion of this opinion). We affirm.

Defendants are the owners of two residential properties in unincorporated Lake County near Round Lake. Defendants Jack and Janice Pittelkow own one lot, which is approximately three acres in size and is improved with a single-family residence. Defendant Amann owns the neighboring lot, which is approximately four acres in size and is also improved with a single-family residence. A gravel driveway, approximately 1,100 feet long, extends from State Route 134 south to the defendants' properties. The driveway crosses property that is being developed by Penguin. Each defendant claimed an easement for ingress and egress by prescription in the driveway. Amann supported her claim with an affidavit prepared in 1990 by a predecessor in interest and subsequently recorded. The affidavit describes an easement for a private road 33 feet wide that extends from Route 134 along a slightly curving path past the Pittelkow property to the Amann property. The affidavit further alleges that the easement has been in use in excess of 70 years. Penguin proposed a residential subdivision on its property and agreed to dedicate land for public roadways within the subdivision to plaintiff.

On December 9, 1997, plaintiff filed a complaint for condemnation naming defendants and unknown owners. The complaint alleged that plaintiff had by resolution and ordinance approved the acquisition of a public right-of-way but had been unable to agree with defendants upon the amount of compensation to be paid for the property. The complaint further alleged:

"That the [Village] now seeks to acquire a public right-of-way in and to the real property legally described as follows:

[the complaint included a legal description substantially conforming to the description in the recorded affidavit] all subject to a non-exclusive easement for the benefit of adjoining property owners, their successors and assigns for ingress and egress over and upon the premises sufficient to accommodate reasonable vehicular traffic to and from Route 134."

On March 11, 1998, defendants filed a traverse and motion to dismiss alleging, *inter alia*, that the taking was not for a public purpose, plaintiff lacked the authority to acquire the property, and the taking of defendants' property was not necessary for any valid public purpose. The trial court conducted a hearing on the motion on June 11, 1998.

At the hearing, Raymond Wolfel, plaintiff's zoning administrator and building commissioner, testified that he was familiar with a planned development known as Valley Lakes and defendants' properties. Wolfel was also familiar with the driveway that extended from defendants' properties to Route 134. Wolfel testified that, as part of the Valley Lakes plan, the driveway would be improved to plaintiff's standards for a public street and dedicated to plaintiff for a public right-of-way. The planned right-of-way would be located along the same route as the existing driveway.

On cross-examination, Wolfel testified that plaintiff's purpose in acquiring the property was to build a public street. Wolfel admitted that he received a letter from the village attorney in 1996 that opined that defendants' claim of an easement would not prevent development of the area. Wolfel testified that the roadway was originally planned along a route west of the easement but that the plan had been modified in response to Amann's claim of a prescriptive easement. The easement was the sole means of ingress and egress for defendants' properties. Wolfel admitted that he was aware Penguin had negotiated to purchase defendants' properties but Penguin and defendants had been unable to agree on a price. Wolfel admitted that the purpose for acquiring a public right-of-way was to allow the Penguin property to be developed for single-family home sites. Wolfel testified that he was aware defendants had filed a lawsuit against Penguin. The trial court took judicial notice that a complaint had been filed in that suit; however, we note that a copy of that complaint is not contained in the record on appeal. Wolfel admitted that plaintiff's condemnation action was commenced in response to the suit against Penguin. On redirect examination, Wolfel testified that the right-of-way would be dedicated to plaintiff and would be a public street open to anyone.

After plaintiff rested its case, defendants moved for a directed verdict arguing, *inter alia*, that "public right-of-way" did not adequately describe an interest in real property. The trial court denied the motion but reserved the issue of whether the phrase "right-of-way" described a property interest subject to condemnation.

Defendant Marianne Amann testified that she and her neighbors maintained a private road leading from their residences to Route 134. Amann testified that the road was eight feet wide. However, Amann claimed an interest in an easement 33 feet wide based on the affidavit that had been recorded with title to her property. Amann testified that plaintiff had offered to pay $500 as compensation for her interest in the easement. She rejected the offer because she believed she had a right to limit use of the easement and felt the loss of privacy she would suffer was more valuable than the $500 plaintiff offered as compensation.

Defendant Janice Pittelkow testified that she and her husband had also been offered $500 for their interest in the easement. They rejected the offer because they had expended more than that amount maintaining the gravel roadway.

Following closing arguments, the trial court denied defendants' motion in part but reserved the issues of whether the phrase "right-of-way" adequately described an interest in property and whether plaintiff had negotiated in good faith. The trial court ordered the parties to brief the two reserved issues and continued the matter for its ruling. On July 9, 1998, the trial court held that the complaint failed to describe an interest in real property and granted defendants' motion to dismiss. The trial court subsequently granted plaintiff's motion to reconsider, denied defendants' motion to dismiss, and set the matter for trial.

At trial, Raymond Wolfel testified that he was familiar with defendants' property and the proposed development. The development plan included a street to be constructed on top of defendants' easement, which would then be dedicated as a public right-of-way.

On cross-examination, Wolfel testified that the entire development plan included approximately 850 acres and called for the construction of approximately 1,800 homes. The original development plan proposed a road to the west of the easement, but the plan was changed in response to defendants' assertion of easement rights and now followed the existing driveway. Wolfel testified that the public right-of-way would be subject to a nonexclusive easement in favor of defendants' property. Wolfel believed that plaintiff was taking none of defendants' rights to use the property.

Thomas Canelakes testified that he was familiar with defendants'

property and the driveway connecting the property to Route 134. Canelakes appraised the driveway portion of the property and considered the value of the driveway in conjunction with defendants' properties. Over defendants' objection, Canelakes testified that he had examined an appraisal made by defendants' expert, David Schwandt, and agreed with Schwandt's conclusions regarding the value of the properties before the taking. Canelakes opined that the value of the Pittelkow property was $180,000 before the taking and remained unchanged after the taking. Canelakes further opined that the value of the Amann property was $110,000 before the taking and remained unchanged after the taking. Over defendants' objection, Canelakes testified that if considered as a separate property the value of the easement was zero before the taking and remained zero after the taking.

On cross-examination, Canelakes testified that he did not believe any property rights were being taken from defendants because the public right-of-way would follow the existing easement and defendants would retain the right to use the public right-of-way. Canelakes admitted that his opinion regarding the nature of the rights taken from defendants formed part of the basis for his valuation of the taking.

Marianne Amann testified that she held an easement for ingress and egress to Route 134. She testified that the driveway was 10 to 12 feet wide but that the full 33-foot width was used for vehicular traffic. She and the Pittelkows shared in the maintenance expense for the easement, and she expended approximately $500 annually for materials.

Jack Pittelkow testified that Amann is his neighbor and that he uses the same easement for access to his property. Jack maintains the easement, spreading gravel and grading the surface. He spends approximately $1,000 annually for material and Amann usually pays one-half of the costs. Jack asserted that only he, his wife, and Amann had a right to use the easement.

Janice Pittelkow testified that Amann is her neighbor. Janice testified that she had heard the questions asked of her husband and that her answers would be the same. Plaintiff rested its case.

David Schwandt, a real estate appraiser, testified for defendants. Schwandt testified that he had appraised the Amann property. The sole means of access to the property was an easement that extended to Route 134. Schwandt determined that the highest and best use of the property was as residential real estate and that the fair market value of the property was $110,000. Schwandt's opinion considered the whole property including the easement.

Plaintiff objected to this method of valuation of an easement interest; the trial court overruled the objection.

Schwandt further testified that he considered the loss of seclusion and privacy in valuing the property after the taking. Schwandt based his valuation on the loss of the exclusive nature of the right-of-way. He considered the property before as having a long driveway and believed the property would be less valuable after the taking because of the nuisance factor of increased traffic. Schwandt testified that the loss of seclusion would result in depreciation of 10% of the value of the Amann property or $11,000. Schwandt based this opinion on his experience that houses located on cul-de-sacs generally sold for 10% more than houses located on busier streets with heavy traffic.

Schwandt also testified that he had appraised the Pittelkow property and concluded that its fair market value was $180,000. Schwandt determined that loss of the easement rights would decrease the value of the property by $18,000 based on the same factors identified for the Amann property.

On cross-examination Schwandt testified that the full 10% diminution in market value was due to factors related to increased traffic and noise. Schwandt stated that he chose 10% as a result of his past experience. However, Schwandt admitted that other appraisers might value seclusion differently and that he had not included comparable sales in his report to support the 10% value.

Marianne Amman testified that the use and enjoyment of her property had decreased as a result of the taking. She testified that her property was less valuable because trees had been cleared from the property surrounding the easement and traffic had increased. Amman also complained that her dog barked when cars passed which disturbed her. Amman considered the responsibility of maintaining the easement a benefit because her neighbor cleared snow from the easement and she did not believe plaintiff would clear snow as effectively.

On cross-examination, Amman claimed that her easement gave her the right to preserve the trees that surrounded the driveway to the full extent of the 33-foot easement. However, Amann admitted that the clearing of trees from the property beyond the easement was not an issue in the case.

Janice Pittelkow testified that approximately 30 lots would be built along the easement if plaintiff acquired it as a public right-of-way. Janice testified that this would affect the privacy and security of her property. She feared that there would be increased traffic along the roadway. She also worried that children would bother the chickens and dogs she kept on her property.

On cross-examination, Janice admitted that she did not own the land under the easement. She also admitted that she did not own the property outside the easement. Janice contended that she would suffer

a loss because she would have to contend with the public on the roadway.

The trial court held that defendants held an easement over the servient property but noted that the owner of that property could grant others the same right and concluded that the easement was nonexclusive. The trial court held, however, that plaintiff condemned an interest in real property, because the condemnation would convert the private easement into a public right-of-way.

The trial court further held that the appropriate measure of damages was the diminution in value of the easement strip as a result of the imposition of the right-of-way and rejected defendants' argument that the diminution in value of the whole should be considered. The trial court concluded that no tangible loss resulted from the imposition of the right-of-way because defendants retained the same rights of ingress and egress after the taking that they held before the taking. Accordingly, the trial court awarded only nominal damages of $50 each to Amann and the Pittelkows. The trial court further found that any damage resulting from a loss of privacy should have been brought as counterclaim for damages to the remainder and denied any recovery on that basis. Defendants appeal.

Defendants first contend that the trial court erred when it dismissed their traverse and motion to dismiss. Defendants argue that (1) the petition failed to describe an interest in property; (2) taking defendants' easement rights was unnecessary; and (3) the taking did not serve a public purpose.

■ A traverse and motion to dismiss challenges the plaintiff's right to condemn the defendant's property and will result in a dismissal when the plaintiff cannot show its right to condemn by proper proof. *Village of Cary v. Trout Valley Ass'n*, 282 Ill. App. 3d 165, 169 (1996). A municipality can exercise only those powers of eminent domain granted it by legislative enactment, and a statute or ordinance granting the power of eminent domain must be strictly construed. *Trout Valley*, 282 Ill. App. 3d at 169; *Forest Preserve District v. Estes*, 222 Ill. App. 3d 167, 175 (1991). When a traverse and motion to dismiss is filed challenging the authority to condemn, the plaintiff bears the burden of making a *prima facie* case of the disputed allegations. *Estes*, 222 Ill. App. 3d at 175. Our standard for reviewing a trial court's decision on a traverse and motion to dismiss is whether the order is against the manifest weight of the evidence presented. *Village of Skokie v. Gianoulis*, 260 Ill. App. 3d 287, 295 (1994).

Defendants first argue that plaintiff was authorized to acquire "property" by section 11—61—1 of the Illinois Municipal Code (65 ILCS 5/11—61—1 (West 1998)) and that a "right-of-way" is not prop-

erty. Defendants concede that plaintiff has the right to acquire an easement through eminent domain but argue that, because the complaint did not contain the word "easement," the complaint failed to describe an interest in real property. Defendants further argue that this deficiency was compounded because plaintiff did not seek to take all of defendants' rights in the property.

■ A plaintiff must reasonably describe the property to be taken in the enabling action, whether by ordinance or resolution, and the failure to properly describe the property to be taken is fatal to the petition. *Illinois State Toll Highway Authority v. DiBenedetto*, 275 Ill. App. 3d 400, 405 (1995). When a defendant's rights are only partially extinguished, the responsibility for an accurate description of the rights taken rests on the plaintiff, not the defendant or the court. *Department of Public Works & Buildings v. Finks*, 10 Ill. 2d 20, 25 (1956).

■ Here, the petition and the enabling actions authorized plaintiff to acquire a "public right-of-way in and to" the real property over which defendants held an easement. "It is settled that a right of way is an easement." *Kurz v. Blume*, 407 Ill. 383, 385 (1950); see also 16A Ill. L. & Prac. *Easements* § 2 (1971) ("[w]hile a right of way is an easement, the term 'easement' is a broader term [than] 'right of way' "); 17 Ill. L. & Prac. *Eminent Domain* § 34 (1956) ("[e]asements, and rights of access or of light and air, constitute property within the protection of the [just compensation clause]"). An easement for a right-of-way is a substantial interest in real property. *Department of Public Works & Buildings v. Schmauss*, 6 Ill. App. 3d 470, 473 (1972). Defendants' argument that plaintiff was not attempting to acquire an interest in property because the petition did not use the word "easement" exalts form over substance and ignores the clear and long-standing definition of "right-of-way." Therefore, we conclude that the phrase "public right-of-way" reasonably described the interest in property that plaintiff sought. See *DiBenedetto*, 275 Ill. App. 3d at 405.

■ Defendants further argue that the petition failed to describe what rights were being taken from them. Plaintiff bore the burden of accurately describing the rights that would be taken from defendants. *Finks*, 10 Ill. 2d at 27. However, one purpose of a condemnation action is to settle competing claims to the property taken and apportion the compensation paid accordingly. See 735 ILCS 5/7—123(a) (West 1998) (granting the trial court exclusive authority to determine all rights in the condemnation award); see also *City of Rockford v. Robert Hallen, Inc.*, 51 Ill. App. 3d 22, 25-26 (1977). Plaintiff's complaint contained a legal description of the property that was to be taken, indicated that

the property would be used as a right-of-way, and expressly reserved a nonexclusive easement for ingress and egress in favor of defendants. This description provided a clear statement of the property that would be affected, the use for which plaintiff sought the property, and the rights that defendants would retain in the property after the taking.

A clear description of the rights to be taken, however, was impossible because defendants changed the nature of their claim throughout the proceedings. For example, on this appeal defendants alternatively argue that the taking was unnecessary because their right to the easement was nonexclusive and that the compensation awarded was inadequate because they lost the seclusion provided by an exclusive easement. We will not construe defendants' failure to present a consistent claim regarding their interest in the property as plaintiff's failure to adequately describe the rights taken.

■ Defendants also argue that the taking was unnecessary because plaintiff could acquire a public right-of-way in the property without interfering with defendants' easement rights. At the hearing on the traverse and motion to dismiss, defendants argued that a taking was unnecessary because their right of ingress was unaffected, but defendants testified that they had the right to exclude the public from the easement. Defendants also asked the trial court to take judicial notice that they had filed suit against Penguin to enforce that right. It is unnecessary that a person actually own an interest in the property taken to be made a defendant in a condemnation action. See *United States v. 88.28 Acres of Land, More or Less*, 608 F.2d 708, 712 (7th Cir. 1979). A person is a proper defendant if she or he claims such an interest. *88.28 Acres*, 608 F.2d at 712. Similarly, we conclude that even if, as the trial court concluded, defendants did not have an exclusive easement, a condemnation action was necessary because they had actively asserted such a right.

■ Finally, defendants argue that the taking was not for a public purpose because the construction of a public right-of-way would benefit a private entity, Penguin. Defendants cite *Southwestern Illinois Development Authority v. National City Environmental, L.L.C.*, 304 Ill. App. 3d 542 (1999), which held that the power of eminent domain may not be used "to take private property from an unwilling seller and *** transfer it to another private enterprise to increase the profits of that enterprise." *Southwestern Illinois Development Authority*, 304 Ill. App. 3d at 553. However, it is well established that a public road is a public highway regardless of the number of people who use it if everyone who desires to do so may lawfully use it. *Department of Public Works & Buildings v. Farina*, 29 Ill. 2d 474, 478 (1963); see also *Southwestern Illinois Development Authority*, 304 Ill. App. 3d at 546

(stating that "[r]oads are clearly used by the public"). A public road continues to serve a public purpose even if that public purpose happens to be highly beneficial to a private individual as well as to the public. *Farina*, 29 Ill. 2d at 480 (holding that a 40-foot access road built in conjunction with a freeway project served a public purpose even though it would provide access to a single business). Here, unlike *Southwestern Illinois Development Authority*, plaintiff was not acquiring private property for the purpose of transferring it to another private entity. Plaintiff proposed no limits on the use of the right-of-way and it would be open on equal terms to all members of the public, including defendants. The potential private benefit to Penguin does not alter the public nature of the right-of-way. See *Farina*, 29 Ill. 2d at 480.

After examining defendants' arguments and the record of the hearing on defendants' traverse and motion to dismiss, we conclude that the trial court's determination that plaintiff had presented a *prima facie* case was not against the manifest weight of the evidence. See *Gianoulis*, 260 Ill. App. 3d at 295.

Defendants finally contend that the trial court's award of nominal damages was erroneous and argue that the trial court used an improper method of valuation. At trial, defendants argued that the value of the easement taken should be determined by comparing the market value of the dominant estate before and after the taking. Plaintiff argued that the trial court should consider the diminution in value of the portion of the property upon which plaintiff imposed its easement. The trial court adopted plaintiff's method of valuation. We believe that the trial court erred and that defendants' method of valuation more accurately reflects the value of the taking.

■ The ultimate goal of a condemnation action is to determine the amount of "just compensation" required by the United States Constitution and the Illinois Constitution, and our examination of the parties' competing theories of valuation is guided by that goal. See U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15; see also *Department of Transportation v. Chicago Title & Trust Co.*, 303 Ill. App. 3d 484, 495 (1999). The purpose of the constitutional "just compensation" provisions is to make the owner whole, not to place her or him in a better position than before her or his land was taken. *Chicago Title & Trust*, 303 Ill. App. 3d at 495, citing *People ex rel. Director of Finance v. Young Women's Christian Ass'n*, 74 Ill. 2d 561, 572 (1979). A reviewing court will not disturb a trial court's award of just compensation that is within the range of evidence unless that award can be attributed to passion, prejudice, or clear mistake. *Kassnel v. Village of Rosemont*, 135 Ill. App. 3d 361, 371 (1985).

Plaintiff cites numerous cases in support of its proposed method of valuation. However, the cases plaintiff cites are inapposite because they all involve the imposition of an easement upon property owned in fee simple. In such a case, the long-standing rule is that the appropriate measure of damages is the diminution in value of the parcel upon which the easement has been imposed. See *North Shore Sanitary District v. Schulik*, 12 Ill. 2d 309, 312 (1957); see also *Lake County Forest Preserve District v. Frecska*, 85 Ill. App. 3d 610, 616 (1980). More recent cases continue to follow this rule. See *Department of Transportation v. First Bank*, 260 Ill. App. 3d 490, 498-99 (1992). However, this method of valuation presumes that the defendant owns a fee interest in the land upon which the easement is impressed and does not accurately reflect the value of the taking when, as here, the land taken is a servient estate subject to an easement and the defendant is the owner of the dominant estate.

■ Defendants' proposed method is better suited to determining the amount of just compensation required to make defendants whole. Defendants cite *Redevelopment Agency v. Torbiner*, 153 Cal. App. 3d 367, 200 Cal. Rptr. 364 (1984). In *Torbiner*, the California Court of Appeal observed:

"The well-established legal standard for evaluating an easement requires an analysis of the decrease in value of the dominant estate (or dominant tenement) resulting from the taking of the easement. The measurement of this decrease must be derived from an appraisal of the value of the dominant estate before and after the taking. This approach has been utilized in every reported eminent domain case in the United States involving condemnation of easements appurtenant ***. [Citations.]" *Torbiner*, 153 Cal. App. 3d at 372, 200 Cal. Rptr. at 367.

The Restatement of Property adopts a similar approach and states:

"Value—Appurtenant easement. Appurtenant easements, being usable only in connection with the use and enjoyment of a dominant tenement, have value only in connection with that tenement. Their value, then, for the purpose of measuring awards of compensation in eminent domain proceedings ordinarily is the reduction in market value of the dominant tenement with its appurtenant easements caused by the condemnation proceedings. Thus the extinguishment of an easement without which the dominant land would be of little, if any, use would call for a much higher award than would the extinguishment of one of merely slight convenience." Restatement of Property § 508, Comment *c*, at 3097 (1944).

■ There are few cases in Illinois that address the condemnation of an appurtenant easement, and our research has uncovered none that squarely address the question of valuation. However, the "access

rights" cases that have been reported are closely analogous to the case at bar. Illinois courts have long recognized that the right of a property owner to access the public streets adjoining her or his property is a valuable property right that may not be taken without just compensation. See *Pure Oil Co. v. City of Northlake*, 10 Ill. 2d 241, 245 (1956). In such a case the proper measure of damages is the difference in market value of the remaining property before and after the access rights are taken. See *First Bank*, 260 Ill. App. 3d at 498.

A hypothetical illustrates the utility of the Restatement approach to the valuation of appurtenant easements. For example, plaintiff might have acquired the easement and constructed a public right-of-way that ended in a cul-de-sac shortly before it reached defendants' properties. If in doing so plaintiff eliminated all right of ingress and egress to defendants' parcels, leaving them completely landlocked, the properties would be of no practical use as residences and would become nearly worthless. The diminution in value of the servient estate, however, would be nearly identical to the diminution resulting from the proposed right-of-way that reaches defendants' properties. Clearly in such a case defendants would be entitled to just compensation approximating the full value of their properties before the taking. However, plaintiff's proposed method of valuation would ignore this diminution in the value of the dominant estate and focus solely on the diminution in the value of the easement strip itself. Therefore, we conclude that the Restatement approach more accurately measures the compensation required when an appurtenant easement is condemned, and the trial court erred when it adopted the approach proposed by plaintiff.

Our analysis does not end, however, with our conclusion that the trial court adopted an improper method of valuation. An appellate court may affirm a trial court on any basis supported by the record beyond the grounds asserted by the trial court, even if the asserted grounds were erroneous. *Messenger v. Edgar*, 157 Ill. 2d 162, 177 (1993); *Pavey Envelope & Tag Corp. v. Diamond Envelope Corp.*, 271 Ill. App. 3d 808, 816 (1995). Moreover, whatever method of valuation the trial court adopted, the ultimate question remains whether the compensation awarded was adequate to make defendants whole. See *Chicago Title & Trust*, 303 Ill. App. 3d at 495.

Determining the diminution in value occasioned by the taking of defendants' easement right requires as a preliminary matter a determination of the nature of the right taken, *i.e.*, whether defendants held an exclusive or nonexclusive easement across Penguin's property. Plaintiff argued that defendants had no right to exclude others from the easement and they could not use their easement rights to prevent

development. Defendants argued, although inconsistently, that their easement interest was exclusive. As we observed above, the need for a judicial determination of the nature of defendants' interest in the subject property propelled this condemnation action. Ultimately, the trial court ruled that defendants' interest in the easement was nonexclusive.

The law of easements is based on a principle of concurrent rather than exclusive use. *McMahon v. Hines*, 298 Ill. App. 3d 231, 239 (1998). Absent an agreement to the contrary, the owner of the servient estate may use her or his property for any purpose consistent with the owner of the dominant estate's right to enjoy the easement. *McMahon*, 298 Ill. App. 3d at 239. Defendants claimed only a prescriptive easement and presented no evidence of an agreement with Penguin, or its predecessors in interest, granting defendants an exclusive right to use the easement. Amann testified that, based on the recorded affidavit describing the easement as a "private road," the easement was for the sole use of her property and the Pittelkow property. However, a grantor can convey no greater interest in real estate than she or he possesses (*City of Maroa v. Illinois Central R.R.*, 229 Ill. App. 3d 503, 507 (1992)) and an easement by prescription is limited to the common and ordinary use which established it (*Schultz v. Kant*, 148 Ill. App. 3d 565, 573 (1986)). Therefore, we conclude that the trial court properly found that defendants' easement was nonexclusive.

Because the defendants' easement was nonexclusive, Penguin should have been free to use the easement in any way not inconsistent with defendants' use of the easement. See *McMahon*, 298 Ill. App. 3d at 239. Accordingly, Penguin was free to pave the easement, subdivide the remaining property and grant easements for ingress and egress to each of the subdivided parcels, as long as defendants were still allowed access to their properties along their easement. The only distinction between this hypothetical use and plaintiff's planned use is that the right to use the roadway will be granted to the public at large rather than simply for the benefit of the newly subdivided properties. Moreover, because the proposed public right-of-way is not a through street and ends in a cul-de-sac, the only members of the public likely to exercise their right to use the right-of-way are those who will live along the new roadway.

The question before the trial court, therefore, was what compensation was occasioned by plaintiff's use of the property for a public road as compared to Penguin's right to use the easement for a private road. A long-standing and almost self-evident rule of eminent domain is that when what is taken for public use is of no value, no award is required for the defendant to be justly compensated. *Department of*

*Public Works & Buildings v. Filkins*, 411 Ill. 304, 309 (1952) (holding that, when a defendant's rights of ingress and egress would be improved by highway construction, no compensation was required). In *County of Cook v. Vander Wolf*, 394 Ill. 521 (1946), our supreme court applied this principle to the taking of an easement. The court held:

> "One holding an easement in a strip of land as a right of way, merely, sustains no damage in consequence of the taking of the land for a street. When the land is taken and maintained as a street by the public authorities the owner's easement of a way is not impaired but still exists, as [she or] he has all the right of way before enjoyed. No property of [hers or] his is therefore taken from [her or] him and [she or] he is deprived of no interest." *Vander Wolf*, 394 Ill. at 526.

The Restatement of Property adopts a similar view and provides the following illustration:

> "Blackacre, owned by A but subject to an easement appurtenant to Whiteacre, owned by B, is condemned for use as a public way. The market value of Whiteacre is unaffected by the destruction of the easement since the public way establishment by the condemnation is fully as serviceable for Whiteacre as was the private way ***." Restatement of Property § 508, Comment *c*, Illustration 2, at 3097-98 (1944).

However, when the dominant estate holds an easement for ingress and egress that is exclusive, loss of the right to exclude may constitute a compensable taking. See *United States v. 10.0 Acres*, 533 F.2d 1092, 1095-96 (9th Cir. 1976) (holding that an exclusive easement is an unusual interest in land amounting almost to a conveyance of the fee).

In the present case, the evidence failed to support defendants' claim of an exclusive easement. Furthermore, plaintiff presented evidence that defendants' rights of ingress and egress would remain virtually unchanged. Moreover, the factors relied upon by defendants' valuation witness, increased traffic and loss of seclusion and privacy, are not necessarily a result of the taking. A decreased market value is compensable only if it results from loss of access or other damage caused by the public improvement; otherwise, it is *damnum absque injuria. Department of Transportation v. Rasmussen*, 108 Ill. App. 3d 615, 626 (1982). Generally, an abutting landowner has no property right in the flow of traffic past her or his premises, and an increase in traffic is not a compensable injury. See *Department of Public Works & Buildings v. Bills*, 66 Ill. App. 2d 170, 176 (1965). The loss of privacy and increased traffic cited by defendants' witness are merely the natural result of Penguin's right, as the owner of the servient estate, to develop its property as it sees fit and do not result from plaintiff's taking. Therefore we conclude that the trial court's award of nominal

damages cannot be attributed to passion, prejudice or clear mistake. See *Kassnel*, 135 Ill. App. 3d at 371.

For the foregoing reasons the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and THOMAS, JJ., concur.